947 F.2d 953
 138 L.R.R.M. (BNA) 2760
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 ELECTROMEDICS, INC. Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, AFL-CIO,
Local Union 537, Real party in Interest.
 No. 90-9563.
 United States Court of Appeals, Tenth Circuit.
 Oct. 30, 1991.
 
 1
 Before LOGAN and SEYMOUR, Circuit Judges, and WINDER, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DAVID K. WINDER, District Judge, Sitting by designation.
 
 
 4
 This matter is before the court on petitioner's petition to review and respondent's cross-application for enforcement of an order of the National Labor Relations Board ("NLRB") affirming the decision of the administrative law judge ("ALJ") against petitioner Electromedics, Inc. ("Employer"). The charging parties claimed that the Employer violated sections 8(a)(3) and 8(a)(1) of the National Labor Relations Act ("Act") in terminating two employees for their efforts to organize a union at the Employer's facility. The Employer contends that the ALJ and the NLRB erred as a matter of fact and law by failing to apply the Wright Line[1] test to analyze a potentially dual motive discharge and by ignoring a preponderance of evidence showing that the discharge resulted from recurring acts of unprotected misconduct in violation of workplace rules.
 
 
 5
 On May 2, 1990 the ALJ issued a proposed order recommending finding that the Employer violated Section 8(a)(3) of the Act but dismissing an alleged violation of Section 8(a)(1). On September 27, 1990, a three-member panel of the NLRB adopted, with minor modification, the recommended order of the ALJ. The NLRB ordered the Employer to offer the discharged employees immediate reinstatement and to post a notice to employees announcing the finding of violation and guaranteeing not to discharge employees for engaging in protected activities or to interfere with the exercise of rights guaranteed by the Act. Employer then filed a Petition of Review by this court pursuant to 29 U.S.C. sec. 160(f).
 
 
 6
 The Employer discharged Gary Hall, a probationary employee, and Joseph Hart, a recently demoted line lead, from their positions as assemblers of medical equipment on March 17, 1989. On March 16th, the afternoon preceding their discharge, both Hall and Hart had reported to Howard Prosky ("Prosky"), the Employer's vice president, that they met with a union organizer and intended to form a union at the plant. During work the evening of March 16th they spread word of a meeting intended to discuss union matters. Although Dannette Brewer ("Brewer"), their supervisor, testified that the workroom was unusually quiet the evening of the 16th, she became extremely disturbed because the employees declined to disclose the purpose of the meeting which she suspected was targeted against her personally. After hearing a report that one employee felt worried about the meeting because of discomfort about teaming up on his superior, Brewer panicked and called Roger Lesher ("Lesher"), the plant production manager. In a quivering voice, Brewer stated that she feared for her safety and recounted a second hand report of employee harassment. Lesher told her to have Hall and Hart escorted off the premises and to have them meet with him the next day.
 
 
 7
 As the employees were being escorted out, Brewer overheard a comment questioning the fuss over forming a union. She realized that she had misinterpreted the purpose of the meeting and reported the union comment to Lesher in a memo.
 
 
 8
 Lesher claimed that he made the decision to terminate Hall and Hart the night of March 16th and that he felt no need to reconsider his termination decision after reading Brewer's memo when he arrived at work on the 17th. This adherence to a hasty, independent decision contradicts the processes of verification, discussion and confrontation demonstrated in previous misconduct incidents. Follow up investigation of Brewer's report and memo would have shown that Brewer's perception of personal persecution was unfounded, that the supposedly victimized employee discredited the harassment report, and that Hall's and Hart's activities on the evening of March 16th actually concerned protected activity.
 
 
 9
 Instead of investigating, on the morning of March 17th, Lesher consulted with his superior Prosky about the discharge decision. The testimony of Prosky and Lesher concerning their conversation demonstrates that Lesher exaggerated the reported misconduct describing the prior night's incident in terms of "fooling around", harassing other employees and causing the supervisor "to be afraid." Lesher also informed Prosky of Hart's recent demotion for horseplay. Although during the conversation Prosky related his discussion with the involved employees about the union and Lesher mentioned Brewer's memo, both stated that union activity was immaterial to the termination decision.
 
 
 10
 Later on the 17th, Lesher informed Hall and Hart of their dismissal. He told Hall that he terminated him for insubordination, excessive absence, interference with fellow employees, incomplete probation, a previous warning about an altercation with a superior and harassment. He told Hart that he was terminated for attendance problems, harassment of other employees and creating an uncomfortable work environment.
 
 
 11
 During the dismissal interview, Lesher emphatically stated that termination was a closed matter. In spite of Brewer's memo indicating misreporting of the precipitating incident and the employees' challenges to his comments, Lesher denied Hall and Hart any opportunity to explain their version of what had occurred. Lesher also misstated the Employer's excused absence policy and relied upon a prior incident of insubordination that appears immaterial in light of testimony by the supervisor who mediated the altercation at issue. Both Hall and Hart refused to sign their termination papers and later contacted the union representative to complain about their discharge.
 
 
 12
 Testimony of different witnesses espoused both lawful and unlawful causes for the discharge. The ALJ recognized that, because of the potential for dual motivation in the Employer action, the Wright Line test was the appropriate legal standard by which to determine whether the Employer had violated Section 8(a)(1) or Section 8(a)(3) of the Act. Wright Line, 662 F.2d at 902-07. According to the Wright Line test, General Counsel must first "make a prima facie showing sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision. Once this is established, the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct." Wright Line, 251 NLRB at 1089.
 
 
 13
 In his decision, the ALJ found that the prima facie elements of violation were met but did not address shifting the burden of production to the employer. The ALJ instead stated that he considered the Employer's justification of the instant discharges so lacking in credibility as to be pretextual and, therefore, patently in violation of the Act. The ALJ postulated an alternate version of the meeting between Lesher and Prosky in which the union activity was openly discussed and the termination decision was based upon union animus.
 
 
 14
 This court disagrees with the Employer's claim that these conclusions demonstrate avoidance of the Wright Line analysis by summarily rejecting and discrediting evidence of legitimate reasons for termination. After the parties have presented all relevant evidence, a finder of fact may distinguish a pretext case from a dual motive case. Wright Line, 251 NLRB at 1084 n. 5. Sufficiency of proof of an employer's asserted justification is only an issue where the employer has demonstrated some merit to his claim that a dual motive existed. Id. Where evidence reveals that asserted justifications are a sham in that the circumstances advanced by the employer either did not exist or were not actually relied upon, the reasons advanced by the employer may be termed pretextual. Id. at 1084. Further, this court has recognized that a business justification which fails for lack of credibility does not constitute improper application of the Wright Line standard or lack of consideration of the defense. Artra Group, Ind. v. NLRB, 730 F.2d 586, 592 (10th Cir.1984). This court, therefore, concludes that the ALJ properly interpreted and applied the pretext prong of the Wright Line test.
 
 
 15
 Furthermore, this court accords deference to the determinations upon which the ALJ based his conclusions. The primary responsibility for "[d]etermining the degree of significance to be accorded the employer's explanation" belongs to the Board so long as their determination is within reason. NLRB v. Dillon Stores, 643 F.2d 687, 692-93 (10th Cir.1981). Credibility determinations and inferences reached by an ALJ after hearing conflicting testimony and examining numerous exhibits deserve particular deference. Id. Finally, factual determinations should not be reversed unless they lack support by substantial evidence on the record. Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88 (1951).
 
 
 16
 Having reviewed the record in light of the deference described above, this court finds that substantial evidence supports the conclusions arrived at by the ALJ and which were adopted by the NLRB panel. The Employer has no affirmative defense under Wright Line to a finding of violation of Section 8(a)(3) of the Act. Further, this court finds no merit to Employer's contention of bias on the part of the ALJ. Rather, what forms the basis for this contention appears to have been an active, but proper involvement of the ALJ in clarifying facts during testimony of both petitioner's and respondent's witnesses. Finally, this court affirms the decision of the NLRB that the Employer failed to raise the objection to the ALJ's off the record settlement discussion in a timely manner. Accordingly, the recommended order of the ALJ, as modified by the panel of the NLRB, is AFFIRMED.
 
 
 
 *
 The Honorable David K. Winder, United States District Judge for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purpose of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 NLRB v. Wright Line, 251 NLRB 1083, 105 LRRM 1169 (1980), enf'd, 662 F.2d 899 (1st Cir.1981), cert. denied, 455 U.S. 989 (1982), approved in NLRB v. Transportation Management Corp., 462 U.S. 393 (1983)